<u>**ORAL ARGUMENT NOT YET SCHEDULED**</u>

No. 22-5216

UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————————————

AMERICAN FOREST RESOURCE COUNCIL, ASSOCIATION OF O&C
COUNTIES, SISKIYOU COUNTY, DOUGLAS COUNTY, LEWIS COUNTY,
and SKAMANIA COUNTY,

*Plaintiffs-Appellants*,

v.

MARTHA WILLIAMS, Director of the U.S. Fish and Wildlife Service, and DEB
HAALAND, Secretary of the Interior,

*Defendants-Appellees*.

—————————————

On Appeal from the United States District Court for the District of Columbia No.
1:21-cv-00601-RJL (Hon. Richard J. Leon)

—————————————

**FINAL REPLY BRIEF FOR APPELLANTS**

—————————————

Tyler G. Welti
VENABLE LLP
101 California Street, Ste. 3800
San Francisco, CA 94111
tgwelti@venable.com
(415) 653.3714

*Counsel for Plaintiffs-Appellants American
Forest Resource Council; Association of O&C
Counties; and Siskiyou County, California*

Dominic M. Carollo,
USDC-DC #OR0011; DC Cir. Ct. App. #62507
Mail: P.O. Box 2456
Roseburg, OR 97470
Office: 2315 Old Highway 99 South
Roseburg, OR 97471
dcarollo@carollolegal.com
541.957.5900
541.957.5923 (fax)

*Special Counsel for Plaintiff-Appellant Douglas
County, Oregon*

Susan Elizabeth Drummond
(Pro Hac Vice); DC Cir. Ct. App. #56482;
WSBA #30689
LAW OFFICES OF SUSAN ELIZABETH
DRUMMOND, PLLC
12224 NE Bel Red Road
Bellevue, Washington 98009-3157
susan@susandrummond.com
206.310.4709

*Special Counsel for Plaintiffs-Appellants Lewis
County, Washington; Skamania County,
Washington*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................... ii

GLOSSARY................................................................................................. vi

INTRODUCTION AND SUMMARY .....................................................................1

ARGUMENT .....................................................................................................3

    I.  The Service fails to show this case is moot. .....................................................3

        A. Plaintiffs' claims challenging the Delay Rules are not moot because the Delay Rules have continuing consequences.................................................4

        B. The Service fails to show that no effective relief can be granted. ............6

        C. The Service fails to distinguish cases holding that challenges to expired or superseded actions remained live in similar circumstances.................12

        D. The cases cited by the Service are distinguishable or support Plaintiffs' argument that this case is not moot. .........................................................19

    II. Exceptions to mootness apply. .....................................................................20

        A. The capable-of-repetition-yet-evading-review exception applies............21

        B. The voluntary-cessation exception applies. ............................................23

CONCLUSION.................................................................................................25

CERTIFICATE OF COMPLIANCE....................................................................28

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Almaqrami v. Pompeo*,
933 F.3d 774 (D.C. Cir. 2019)....................................................6

*Alton & S. Ry. Co. v. Int't Ass'n of Machinists*,
463 F.2d 872 (D.C. Cir. 1972).................................................22

*Am. Mar. Ass'n v. United States*,
766 F.2d 545 (D.C. Cir. 1985)...........................................2, 6, 13

*Bennett v. Spear*,
520 U.S. 154 (1997)..............................................................10

*Byrd v. EPA*,
174 F.3d 239 (D.C. Cir. 1999).................................................17

*Carpenters Indus. Council v. Zinke*,
854 F.3d 1 (D.C. Cir. 2017)....................................................22

*Chafin v. Chafin*,
568 U.S. 165 (2013) ...............................................................6

*Church of Scientology of Cal. v. United States*,
506 U.S. 9 (1992)..................................................................10

*City of Houston v. Dep't of Hous. & Urb. Dev.*,
24 F.3d 1421 (D.C. Cir. 1994)................................................11

*Clarke v. United States*,
915 F.2d 699 (D.C. Cir. 1990) (en banc)...............................19, 24

*County of Los Angeles v. Davis*,
440 U.S. 625 (1979)............................................................3, 24

*Del Monte Fresh Produce Co. v. United States*,
570 F.3d 316 (D.C. Cir. 2009).................................................22

*Doe v. Sullivan*,
938 F.2d 1370 (D.C. Cir. 1991)...............................................21

ii

*Government of Manitoba v. Bernhardt,*
    923 F.3d 173 (D.C. Cir. 2019) ...............................................................5

*Johnson v. Manhattan Ry. Co.,*
    289 U.S. 479 (1933) ..............................................................................14

*Kennecott Utah Copper Corp. v. U.S. Dep't of Interior,*
    88 F.3d 1191 (D.C. Cir. 1996) .....................................................3, 4, 5, 16

*Kingdomware Techs., Inc. v. United States,*
    579 U.S. 162 (2016) ..............................................................................21

*Md. Cas. Co. v. Pac. Coal & Oil Co.,*
    312 U.S. 270 (1941) ................................................................................7

*Moore v. Ogilvie,*
    394 U.S. 814 (1969) .............................................................................22

*Nat. Res. Def. Council, Inc. v. EPA,*
    966 F.2d 1292 (9th Cir. 1992) ..........................................................10-11

*Nat. Res. Def. Council v. Abraham,*
    355 F.3d 179 (2d Cir. 2004) ..........................................6, 12, 14, 20

*Nat. Res. Def. Council v. EPA,*
    683 F.2d 752 (3d Cir. 1982) ................................................................15

*Nat. Res. Def. Council v. Peña,*
    147 F.3d 1012 (D.C. Cir. 1998) ..........................................................17

*New York v. Abraham,*
    199 F. Supp. 2d 145 (S.D.N.Y. 2002) ................................................12

*Newdow v. Roberts,*
    603 F.3d 1002 (D.C. Cir. 2010) ..........................................................21

*Nw. Envtl. Def. Ctr. v. Gordon,*
    849 F.2d 1241 (9th Cir. 1988) ......................................................12, 16

*Pickus v. U.S. Bd. of Parole,*
    507 F.2d 1107 (D.C. Cir. 1974) ..........................................................18

*Ralls Corp. v. Comm. on Foreign Inv. in U.S.*,
    758 F.3d 296 (D.C. Cir. 2014)..................................................22

*Safari Club Int'l v. Jewell*,
    842 F.3d 1280 (D.C. Cir. 2016)...............................................21

*Save Greers Ferry Lake, Inc. v. Dep't of Def.*,
    255 F.3d 498 (8th Cir. 2001) .........................................11, 12

*Schering Corp. v. Shalala*,
    995 F.2d 1103 (D.C. Cir. 1993).............................................14

*S. Pac. Terminal Co. v. ICC*,
    219 U.S. 498 (1911)...............................................................16

*Sorenson Commc'ns Inc. v. FCC*,
    755 F.3d 702 (D.C. Cir. 2014)..................................................6

*Super Tire Eng'g Co. v. McCorkle*,
    416 U.S. 115 (1974).............................................................7, 9

*Transwestern Pipeline Co. v. FERC*,
    897 F.2d 570 (D.C. Cir. 1990)..................................................7

*Union of Concerned Scientists v. Nuclear Regul. Comm.*,
    711 F.2d 370 (D.C. Cir. 1983).................................2, 6, 9, 11, 13, 14

*United Bhd. of Carpenters v. Operative Plasterers & Cement Masons'*
    *Int'l Ass'n*,
    721 F.3d 678 (D.C. Cir. 2013).................................................23

*United States v. Johnson*,
    632 F.3d 912 (5th Cir. 2011) ....................................................5

**Statutes**

5 U.S.C § 702 ...................................................................... 11-12

5 U.S.C. § 704 ..........................................................................10

5 U.S.C. § 706 ......................................................................7, 10

16 U.S.C. § 1533 ......................................................................10

16 U.S.C. § 1540 ................................................................................10

Administrative Procedure Act.......................................1, 5, 7, 10, 11, 20

Endangered Species Act..............................................1, 4, 5, 10

**Rules and Regulations**

50 C.F.R. § 424.19 ...............................................................................5

*Endangered and Threatened Wildlife and Plants; Revised Designation*
*of Critical Habitat for the Northern Spotted Owl*, 86 Fed. Reg.
4,820 (Jan. 15, 2021) ................................................... 1, 2, 4-9, 11, 14-18, 22-24

*Endangered and Threatened Wildlife and Plants; Revised Designation*
*of Critical Habitat for the Northern Spotted Owl; Delay of*
*Effective Date*, 86 Fed. Reg. 11,892 (Mar. 1, 2021)...........................1, 21, 24, 25

*Endangered and Threatened Wildlife and Plants; Revised Designation*
*of Critical Habitat for the Northern Spotted Owl; Delay of*
*Effective Date*, 86 Fed. Reg. 22,876 (Apr. 30, 2021) ..............................1, 24, 25

*Endangered and Threatened Wildlife and Plants; Revised Designation*
*of Critical Habitat for the Northern Spotted Owl*, 86 Fed. Reg.
62,606 (Nov. 10, 2021) .............................................. 1-5, 8-9, 11, 14, 19, 22-24

# GLOSSARY

| | |
|---|---|
| APA | Administrative Procedure Act |
| Delay Rules | First Delay Rule and Second Delay Rule |
| ESA | Endangered Species Act |
| First Delay Rule | *Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl*; *Delay of Effective Date*, 86 Fed. Reg. 11,892 (Mar. 1, 2021) |
| January 2021 Rule | *Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl*, 86 Fed. Reg. 4,820 (Jan. 15, 2021) |
| November 2021 Rule | *Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl*, 86 Fed. Reg. 62,606 (Nov. 10, 2021) |
| Owl | Northern Spotted Owl |
| Proposed November 2021 Rule | *Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl*, 86 Fed. Reg. 38,246 (July 20, 2021) |
| Second Delay Rule | *Endangered and Threatened Wildlife and Plants; Revised Designation of Critical Habitat for the Northern Spotted Owl; Delay of Effective Date*, 86 Fed. Reg. 22,876 (Apr. 30, 2021) |
| Service | U.S. Fish and Wildlife Service |
| 2012 Rule | *Endangered and Threatened Wildlife and Plants; Designation of Revised Critical Habitat for the Northern Spotted Owl; Final Rule*, 77 Fed. Reg. 71,876 (Dec. 4, 2012) |

## INTRODUCTION AND SUMMARY

The U.S. Fish and Wildlife Service ("the Service") issued the Delay Rules[1] without notice and comment and made them effective immediately to prevent the January 2021 Rule[2]—issued during the prior Presidential administration—from changing the critical habitat designation for the Northern Spotted Owl ("Owl"). Plaintiffs-Appellants challenged the Delay Rules, arguing that while the Service may amend the designation, it must comply with the Administrative Procedure Act ("APA") and Endangered Species Act ("ESA") in doing so. Plaintiffs argued that because the Delay Rules were issued illegally, they are invalid and thus did not prevent the January 2021 Rule from changing the designation.

Defendants-Appellees (collectively, "the Service") fail to meet their heavy burden to show that the Service mooted this case by then issuing the November 2021 Rule.[3] They try to carry that burden by arguing that, since the Delay Rules have expired, the only redressable harm to Plaintiffs stems from the November 2021 Rule. But the November 2021 Rule did not eradicate the effects of the unlawful Delay Rules. Rather, the November 2021 Rule was premised on the Delay Rules having prevented the January 2021 Rule from taking effect.

---

[1] 86 Fed. Reg. 11,892 (Mar. 1, 2021) ("First Delay Rule") (JA-671); 86 Fed. Reg. 22,876 (Apr. 30, 2021) ("Second Delay Rule") (JA-675) (collectively, "Delay Rules").

[2] 86 Fed. Reg. 4,820 (Jan. 15, 2021) ("January 2021 Rule") (JA-630).

[3] 86 Fed. Reg. 62,606 (Nov. 10, 2021) ("November 2021 Rule") (JA-699).

Because the November 2021 Rule relies on the unlawful Delay Rules, relief from the Service's illegal conduct is available. For example, the Court could hold the Delay Rules unlawful and invalid, reinstate the January 2021 Rule's original effective date, declare that the January 2021 Rule reduced the Owl's critical habitat area to 6,105,279 acres, and declare that the Service's contrary position in subsequent rules is without basis. This relief is meaningful and not impermissibly advisory because it would affect the parties' rights. Indeed, the Service admits that the November 2021 Rule continues the dispute and that the parties' briefing in this case also goes to that rule's legality. Nov. 2021 Rule, 86 Fed. Reg. at 62,613 (JA-706). And its only answer to the decisions of this Court and others that reject mootness challenges to similar expired or superseded rules is to say that the subsequent rule must be challenged in the same complaint. This Court has held the contrary. *Union of Concerned Scientists v. Nuclear Regul. Comm.*, 711 F.2d 370, 371, 377-79 (D.C. Cir. 1983); *Am. Mar. Ass'n v. United States*, 766 F.2d 545, 554 n.14 (D.C. Cir. 1985).

This case also remains live because it is capable of repetition yet evading review. The Service's successive delays were designed to expire before they could be litigated, prevent the prior rule from taking effect, and thus allow the Service time to withdraw it. This use of expiring delay rules is part of a larger pattern in which new Presidential administrations freeze the outgoing administration's rules without

complying with rulemaking requirements while they draft new ones. There is every reason to expect this wrongful conduct will recur. The voluntary-cessation exception to mootness also applies because the Service's course of action is designed to evade review, and the November 2021 Rule did not eradicate the effects of the Delay Rules' violations.

## ARGUMENT

### I.    The Service fails to show this case is moot.

"An issue becomes moot if intervening events leave the parties without 'a legally cognizable interest' in [the court's] resolution of those issues." *Kennecott Utah Copper Corp. v. U.S. Dep't of Interior*, 88 F.3d 1191, 1207 (D.C. Cir. 1996) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). To show an issue's mootness, the Service must "prov[e] that, because 'interim relief or events have completely and irrevocably eradicated the effects of the alleged violation,' [Plaintiffs] lack such an interest." *Id*. (citation omitted). "In other words, [the Service] must demonstrate either that [Plaintiffs] no longer suffer a legally cognizable injury traceable to the alleged violations or that the court can no longer provide . . . any meaningful relief." *Id*. (citations omitted). The Service fails to meet this "heavy" burden. *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979).

### A.    Plaintiffs' claims challenging the Delay Rules are not moot because the Delay Rules have continuing consequences.

In its Response Brief, the Service abandons its argument that the rulemaking process for the November 2021 Rule mooted Plaintiffs' procedural claims against the Delay Rules by curing procedural harms. Resp. at 26-27; *see* Opening Br. at 33-34 (addressing this argument); *Kennecott*, 88 F.3d at 1208 (rejecting this argument). The Service also concedes that the Delay Rules have ongoing consequences because they prevented the January 2021 Rule from taking effect and thus established the critical habitat baseline for the November 2021 Rule. Because of that changed baseline, the November 2021 Rule purports to only subtract about 200,000 acres from the 2012 Rule's 9,577,969-acre critical habitat designation rather than add over 3 million acres to the January 2021 Rule's 6,105,279-acre designation. Resp. at 10, 22-23; *see also* Opening Br. at 11-12 n.3, 25-26 & n.8 (collecting relevant portions of the November 2021 Rule). The Service acknowledges the Delay Rules allowed it to avoid ESA requirements for designating critical habitat by treating the November 2021 Rule as if it only removed areas from the designation. *See* Resp. at 23 n.7; Opening Br. at 12 n.4, 26-27 (collecting relevant portions of the November 2021

Rule).[4] Nor does the Service seriously dispute that these consequences trace to the Delay Rules.[5]

For all these reasons, Plaintiffs claim that the Delay Rules' violations of the APA and ESA harm them. The Service does not argue those harms have been cured. Rather, it appears to concede that the Delay Rules have ongoing effects that prejudice Plaintiffs, as they prevented the January 2021 Rule from taking effect and determined the baseline for subsequent agency action. It follows that "interim relief or events"—expiration of the Delay Rules and issuance of the November 2021 Rule—have *not* "completely and irrevocably eradicated the effects" of the alleged violations, and this controversy remains live. *Kennecott*, 88 F.3d at 1207-08 (procedural challenge to an action taken without notice-and-comment rulemaking

---

[4] In a footnote, the Service suggests this was harmless error. Resp. at 23 n.7. Plaintiffs explained why this argument is irrelevant to assessing mootness and wrong. Opening Br. at 27-29; *see, e.g.*, *United States v. Johnson*, 632 F.3d 912, 921 (5th Cir. 2011) (harmless error is a merits issue). In any case, reference to an economic report prepared over a decade ago and unspecified "updates" did not provide the analysis or process required by 50 C.F.R. § 424.19. The "update" did not address the November 2021 Rule; it advised that the 2012 economic report was outdated and a "new prospective analysis" based on "new data and information" was needed. (JA-619). Nor did the 2012 report address areas designated under the November 2021 Rule. *See* (JA-619).

[5] The Service summarily states that "[a]ny injury Plaintiffs may have is caused by the November 2021 Rule, not the expired delay rules." Resp. at 24. The Service forfeited this "threadbare" argument. *Government of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019). If considered, the argument fails. The consequences of the Delay Rules unlawfully preventing the January 2021 Rule from taking effect trace to those rules even if continued by another action.

5

that prevented a proposed rule from taking effect not mooted by a new rule that treated the prior rule as having never taken effect); *Union of Concerned Scientists*, 711 F.2d at 377-79 (challenge to a prior rule not moot when a subsequent rule was "partially predicated" on the prior rule); *Am. Mar. Ass'n*, 766 F.2d at 553-54 n.14 (challenge to a prior rule not moot when a subsequent rule "reaffirm[ed]" and "basically adopt[ed]" its disputed findings).

### B. The Service fails to show that no effective relief can be granted.

Despite ongoing dispute over whether the Delay Rules validly prevented the January 2021 Rule from taking effect, the Service argues this case is moot because no meaningful relief could be granted. The standard for showing no effective relief is available is "demanding." *Almaqrami v. Pompeo*, 933 F.3d 774, 779 (D.C. Cir. 2019). "[A] case becomes moot only if, assuming the plaintiff prevails, 'it is impossible for a court to grant [them] any effectual relief whatever.'"[6] *Id.* (quoting

---

[6] Courts "assume that the plaintiff will 'prevail'" unless an argument "is 'so implausible that it is insufficient to preserve jurisdiction.'" *Almaqrami*, 933 F.3d at 779 (quoting *Chafin v. Chafin*, 568 U.S. 165, 174 (2013)). The Service does not argue that this low standard is not met but makes passing merits arguments. Briefly, the Delay Rules were clearly unlawful. First, the Service cannot meet its heavy burden of showing it had "good cause" to skip rulemaking requirements because it wanted time to reconsider the January 2021 Rule after a change in Presidential administration, and to assess "potential" defects. *See* Resp. at 8-9, 39-40; ECF 13-1 at 20-33 (JA-070-083); ECF 22 at 11-21 (JA-105-115); ECF 29-1 at 6-15 (JA-216-225); *see, e.g.*, *Nat. Res. Def. Council v. Abraham*, 355 F.3d 179, 204-06 (2d Cir. 2004) (rejecting this basis for good cause); *Sorenson Commc'ns Inc. v. FCC*, 755 F.3d 702, 706 (D.C. Cir. 2014) (finding no good cause where the agency speculated

6

*Chafin*, 568 U.S. at 172). "[I]f there is 'any chance' that relief will be effective in securing what [the plaintiff] seeks, [the plaintiff] has an interest in obtaining it," and the case remains live. *Id.* (citation omitted). Further, even where injunctive relief may not be available, courts must "decide the appropriateness and the merits of the declaratory request . . . ." *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 121 (1974) (quoting *Zwickler v. Koota*, 389 U.S. 241, 254 (1967)); *see* 5 U.S.C. § 706(2). Declaratory relief is available and not impermissibly advisory if "the facts alleged . . . show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941). In other words, if relief will "presently affect the parties' rights" or "have a more-than-speculative chance of affecting them in the future," it is available. *Transwestern Pipeline Co. v. FERC*, 897 F.2d 570, 575 (D.C. Cir. 1990).

---

there "there *could* be" a problem) (emphasis in original)). Nor was there any "logical outgrowth" problem with the January 2021 Rule, as the Service suggests. *See* Resp. at 1, 7-8; ECF 22 at 16 (JA-110) (refuting this argument). The Service is also wrong that the ESA's sixty-day notice requirement applies to Plaintiffs' claims for violating the APA's rulemaking requirements. *Id.* at 11 n.5; ECF 22 at 4-7 (JA-098-101) (refuting this argument and collecting cases). Second, the Delay Rules did not comply with the ESA's additional requirements for designating critical habitat. *See* ECF 29-1 at 20-21 (JA-230-231). Third, the Service violated the APA by entirely failing to discuss several deciding factors for the January 2021 Rule in amending that rule to prevent it from taking effect. *See* ECF 22 at 21-24 (JA-115-118).

Among other relief, Plaintiffs seek to establish that: the Delay Rules are unlawful and invalid; the January 2021 Rule thus took effect and reduced the Owl's critical habitat designation; and any subsequent actions based on the Delay Rules having prevented the January 2021 Rule from taking effect are invalid. Proposed Amended Compl., ECF 26-2 at 45-46 (JA-178-179). The Service fails to show none of this relief is available. As discussed above, there is an ongoing controversy between adverse parties on whether the Delay Rules are valid and the January 2021 Rule took effect. This controversy is immediate and real. The Service has not abandoned its claim that the Delay Rules validly prevented the January 2021 Rule from taking effect but continues it in the November 2021 Rule.

Available relief would also be meaningful. It would, for example, establish that the Delay Rules were unlawful, the January 2021 Rule took effect, and thus the critical habitat designation was three million acres smaller—an area roughly the size of Connecticut—when the Service issued the November 2021 Rule. Declaratory relief would mean that the November 2021 Rule's predicate—that the Service was only excluding about 200,000 acres from the 2012 Rule's 9,577,969-acre designation—is wrong. The requested relief would mean that the Service's assertion that it did not need to comply with the ESA's economic study requirement or apply its new definition of habitat in issuing the November 2021 Rule—because the Service was not designating critical habitat—is wrong too. Indeed, the November

2021 Rule itself tacitly acknowledges that the claims here continue to be meaningful by stating that the Service's "briefs before the [district] court" *in this case* show that the Service's "decision to delay the implementation of the [January 2021 Rule] and ultimately to allow for this additional rulemaking to withdraw it, was consistent with all applicable laws," and by incorporating those briefs. Nov. 2021 Rule, 86 Fed. Reg. at 62,613 (JA-706).

In short, declaratory relief would settle a disputed legal issue presented in this case that affects the parties' rights—whether the Delay Rules were invalid and, as a result, the January 2021 Rule amended the Owl's critical habitat designation. The Court thus can (and must) decide this issue, which the parties have briefed. *Super Tire Eng'g Co.*, 416 U.S. at 121. Even if review could be deferred, "the interest of sound judicial administration" favors resolving this dispute now rather than requiring the parties to brief the same issues as part of a much larger and longer challenge to the November 2021 Rule. *See Union of Concerned Scientists*, 711 F.2d at 379 (explaining that even though relief could also be granted in a challenge to a subsequent rule when it "eventually percolates up to this court," the challenge to the superseded interim rule should be decided because "[i]t was, after all, the interim rule in which the [disputed] finding was made").

Against these arguments, the Service takes the cramped view that the Court's remedial authority is limited to setting aside the specific agency actions challenged

in the complaint before it. Resp. at 19-20. While the Court need not reach this issue because this case is live if any relief is available, the Service is mistaken. *See Church of Scientology of Cal. v. United States*, 506 U.S. 9, 13 (1992) (a claim is not moot when the court "ha[s] the power to effectuate a partial remedy"). The Service appears to ground this view in the idea that the APA's final agency action requirement, 5 U.S.C. § 704, confines the court's remedial authority to the challenged action. This argument fails for several reasons.

First, Plaintiffs assert claims for relief under the APA *and the ESA's citizen suit provision*, 16 U.S.C. § 1540(g)(1). The Service does not explain why an APA requirement limits relief for ESA claims challenging the Service's violations of 16 U.S.C. § 1533's requirements for designating critical habitat. It does not. *See Bennett v. Spear*, 520 U.S. 154, 171-75 (1997) (section 1533 claims are ESA citizen suit claims but section 1536 claims are APA claims subject to the final agency action requirement).

Second, the APA does not prohibit courts from ruling on broader issues presented by final agency actions (which the Delay Rules undisputedly are) or fashioning relief that affects other actions that depend on them. Rather, the APA directs courts to "hold unlawful and set aside" not just final agency actions, but "agency action, findings, and conclusions." 5 U.S.C. § 706(2). Courts may also issue declaratory relief that "delineates important rights and responsibilities" more

broadly. *Nat. Res. Def. Council, Inc. v. EPA*, 966 F.2d 1292, 1299 (9th Cir. 1992). Here, for example, the Court may declare unlawful and set aside the Service's position, established by the Delay Rules and carried forward by the November 2021 Rule, that the January 2021 Rule never revised the Owl's critical habitat designation.

Third, the Service's argument conflicts with precedent. That precedent includes the rule that "if a plaintiff's allegations go not only to a specific agency action, but to an ongoing policy as well, and the plaintiff has standing to challenge the future implementation of that policy, then declaratory relief may be granted if the claim is ripe for review." *City of Houston v. Dep't of Hous. & Urb. Dev.*, 24 F.3d 1421, 1430 (D.C. Cir. 1994). This rule shows that relief remains available even if a "future" action continuing a disputed position has not occurred when mootness is decided. Precedent also dictates, contrary to the Service's argument, that courts reviewing expired or superseded agency actions with ongoing consequences can find subsequent agency actions relying on them invalid. *See, e.g.*, *Union of Concerned Scientists*, 711 F.2d at 371, 383 (vacating a final rule based on the challenged interim rule); *Save Greers Ferry Lake, Inc. v. Dep't of Def.*, 255 F.3d 498, 501 (8th Cir. 2001) (finding an expired plan unlawful and then declaring permits based on it "may not be recognized or enforced as a matter of law").

Nor does the Service show that injunctive relief is unavailable. Having found a prior agency action unlawful, Courts may enjoin agencies to remedy harms. *See* 5

11

U.S.C § 702 (courts may award an "injunctive decree" in APA cases); *Nw. Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1245 & n.6 (9th Cir. 1988) (finding the district court could order the agency "to consider any damage caused by" expired fishery management actions in subsequent actions and "certainly could enjoin the [subsequent actions] if they failed to do so").[7] Here, like in these cases, a court could remedy harm to Plaintiffs by enjoining the Service from taking further action in reliance on the invalid Delay Rules.

Accordingly, the Service has not met the demanding standard for showing this case is moot because no effective relief is available.

**C.     The Service fails to distinguish cases holding that challenges to expired or superseded actions remained live in similar circumstances.**

As Plaintiffs have explained, courts have held that challenges to expired or superseded agency actions remained live in similar circumstances. Opening Br. at 21-24. The Service fails to adequately distinguish these cases.

None of these cases held, as the Service argues, that a challenge to a prior rule remains live only where a subsequent rule relying on it or continuing a position

---

[7] The Service incorrectly dismisses *Gordon* as "wrongly decided." Resp. at 27. But other cases have also awarded injunctive relief in challenges to expired rules with ongoing effects. *See, e.g.*, *Abraham*, 355 F.3d at 206 (granting relief enjoining subsequent agency actions based on an invalid delay rule); *see also New York v. Abraham*, 199 F. Supp. 2d 145, 147 (S.D.N.Y. 2002) (specifying relief); *Save Greers Ferry Lake*, 255 F.3d at 501 (ordering the removal of docks permitted based on an unlawful, expired plan within one year if the agency did not remedy its violations).

established by it is also challenged in the complaint. *See* Resp. at 24-25. This Court

has held the opposite. In *Union of Concerned Scientists*, this Court found a new rule

did not moot a claim challenging a superseded prior rule prescribed without notice

and comment because the prior rule was "a predicate to the final rule," thus

"preserv[ing] the case or controversy." 711 F.2d at 377-79; *see also id.* at 371

(explaining that while the challenged "'interim rule'[] has now been superseded by

another rule[,] . . . [i]n promulgating the interim rule . . . the Commission made a

factual determination upon which the final rule is predicated in part . . . without

affording public notice and opportunity to comment"). The Court then set aside the

procedurally unlawful, superseded interim rule and required a new rulemaking

process even though the final rule was not challenged. *Id.* at 383. Similarly, in *Am.

Mar. Ass'n*, this Court awarded relief even though a subsequent rule based on a

superseded interim rule was not challenged in the complaint. 766 F.2d at, 553-54

n.14. In so doing, the Court took "judicial notice of the fact that the final rule

reaffirms the findings discussed in the interim rulemaking and basically adopts the

interim rule's [position on the issue in dispute]," thereby preserving a challenge to

the interim rule. *Id.*

Nor can the Service distinguish the cases Plaintiffs cite on the ground that the

Delay Rules "contained no substantive findings or regulatory schemes that were

carried forward." Resp. at 26. As this Court has held, it is enough to defeat mootness

that the subsequent rule is "partially predicated" on a prior rule. *Union of Concerned Scientists*, 711 F.2d at 377; *see Schering Corp. v. Shalala*, 995 F.2d 1103, 1105-06 (D.C. Cir. 1993) (recognizing that a challenge to a superseded agency action is not moot where the action "served as a foundation for the [later] regulations"). Because the November 2021 Rule relies on the Delay Rules having prevented the January 2021 Rule from taking effect, the Delay Rules have substantive consequences.

The Service cannot distinguish *Abraham*, which allowed a procedural challenge to an expired delay rule on which subsequent rules were based. 355 F.3d at 206 n.14. The Service argues that mootness was not at issue. Resp. at 25. In fact, mootness was thoroughly briefed, and the Second Circuit rejected the argument that subsequent rules "*either cured or mooted* the absence of notice and comment prior to the amendment of the original standards' effective date." 355 F.3d at 206 n.14 (emphasis added).

The Service also mischaracterizes *Abraham* as resting on the consolidation of the challenge to the expired delay rule with a separate challenge to the subsequent rule. Not only does the Second Circuit's opinion not say that, but consolidation has no jurisdictional consequence. *Johnson v. Manhattan Ry. Co.*, 289 U.S. 479, 496-97 (1933). The court reasoned that the expired delay rule was the predicate of the subsequent withdrawal and replacement of the delayed rule, which have no effect if the delay rule is found invalid. *Abraham*, 355 F.3d at 206 n.14 (finding the case was

14

not moot because "the subsequent proceedings would be barred themselves if petitioners prevail on their claim regarding the February delay"); *id.* at 206 (explaining that the delay rule "was promulgated without complying with the APA's notice-and-comment requirements, . . . [and a]s a consequence, . . . failed to amend the original [rule's] designated effective date," thus prohibiting a subsequent rule based on a different baseline). The court set aside the expired delay rule and declared the rule the agency tried to delay effective as of its original effective date. *Id*. The same relief is available here: The Court may set aside the Delay Rules, declare the January 2021 Rule effective as of its original effective date, and declare subsequent actions based on the Delay Rules without effect.

The Service argues that *Natural Resources Defense Council, Inc. v. U.S. EPA*, 683 F.2d 752 (3d Cir. 1982), found a challenge to an expired delay rule live only with respect to prior rules further delayed by a subsequent rule, but not prior rules that had since taken effect. Resp. at 28. That holding supports Plaintiffs' argument. This challenge is live because the January 2021 Rule did not subsequently take effect and the Service has continued to act based on it having never taken effect.

Other courts have also held that challenges to expired or superseded rules remain live where the rules are likely to serve as the basis of future rules harming plaintiffs. For example, in *Reno v. Bossier Parish School Board*, the Supreme Court held that claims for declaratory relief that an expired redistricting plan was unlawful

did not become moot when the plan expired because it could serve as the baseline for future plans. 528 U.S. 320, 327-28 (2000) ("[I]n at least one respect the 1992 plan will have probable continuing effect: Absent a successful subsequent challenge . . . [the 1992 plan], rather than the 1980 predecessor plan—which contains quite different voting districts—will serve as the baseline against which appellee's next voting plan will be evaluated."); *see also S. Pac. Terminal Co. v. ICC*, 219 U.S. 498, 515 (1911) (reviewing the validity of an expired order that "may to some extent (the exact extent it is unnecessary to define) be the basis of further proceedings"); *Gordon*, 849 F.2d at 1245 (finding a challenge to expired salmon management measures was not moot because they informed baseline assumptions related to salmon spawn numbers in later years' measures). Similarly, a successful challenge to the Delay Rules means that the January 2021 Rule established the baseline critical habitat designation that must be considered in any later revision. The November 21 Rule avoided that baseline because of the Delay Rules.

*Kennecott* is also on point. There, the agency withdrew a proposed rule before it could go into effect and then issued a different rule. 88 F.3d at 1200-01. The plaintiffs challenged the withdrawal of the proposed rule, arguing it was invalid because the agency did not comply with rulemaking requirements. The Court rejected the agency's argument that the subsequent rule mooted the plaintiffs' claims, reasoning that the superseded withdrawal had continuing effects and the

16

subsequent rule had not cured the procedural violations alleged. *Id.* at 1207-08. The same reasoning applies here.

The Service misses the point in arguing that mootness was not at issue in *Natural Resources Defense Council v. Peña*, 147 F.3d 1012 (D.C. Cir. 1998) and *Byrd v. U.S. EPA*, 174 F.3d 239 (D.C. Cir. 1999). Those cases held that declaratory relief that a committee made findings without procedure required by law remained available because it would give plaintiffs "ammunition" in subsequent proceedings based on the findings. *Byrd*, 174 F.3d at 244. If declaratory relief is available where a future action taken in reliance on a prior finding has not happened, it is available here, where the Service has already acted.

The Service also falls short in seeking to distinguish this case from others reviewing an ongoing position established by an agency action even though that action had been withdrawn. The Service is mistaken that Plaintiffs have not challenged an ongoing policy. Resp. at 28 & n.11, 29-32. From the outset, Plaintiffs sought to establish not only that the Delay Rules are invalid but also that the January 2021 Rule revised the critical habitat designation. Compl., ECF 1 at 36-37 (JA-036-037); Proposed Second Compl., ECF 26-2 at 45-46 (Aug. 25, 2021) (JA-178-179). Expecting that the Service would continue its position that the January 2021 Rule did not take effect in yet another rule, Plaintiffs also sought relief declaring "that any subsequent rule that depends on the validity of the [Delay Rules] is unlawful and

17

invalid." *Id.* at 45 (JA-178). In other words, Plaintiffs sought to invalidate the Service's ongoing position that the January 2021 Rule never revised the Owl's critical habitat designation because of the Delay Rules.

The Service asserts these cases are also inapplicable because an agency's position "that its own past completed actions were valid is not properly understood as a 'policy' that is susceptible to judicial review." Resp. at 29-30. The Service provides no reason why a position established by an agency action and continued by a subsequent action is not a policy susceptible to judicial review.[8] As in the cases discussed above, the Court can rule on the Service's ongoing position that the Delay Rules were valid and the January 2021 Rule never went into effect even if the Delay Rules have been superseded.

The Service thus has no ground to distinguish cases like *Pickus v. U.S. Board of Parole*, 507 F.2d 1107 (D.C. Cir. 1974), as involving ongoing policies. *Pickus* held that a declaration on the validity of superseded parole guidelines was available because subsequent guidelines were based on the same disputed position that rulemaking requirements did not apply. *Id.* at 1110-11. Here, Plaintiffs seek a declaration that the Delay Rules were unlawful and invalid and the January 2021

---

[8] The Service mentions the rebuttable the presumption of regularity but does not explain how it shields a position established by a past action and continued in a subsequent action from review. Resp. at 30. It does not and is irrelevant here.

Rule went into effect. As in *Pickus*, that the November 2021 Rule continues to assert otherwise "preserve[s], rather than moot[s], the original controversy." *Id.* at 1111.

### D.    The cases cited by the Service are distinguishable or support Plaintiffs' argument that this case is not moot.

The cases the Service cites do not show this case is moot because none involved a challenge to a prior rule on which a subsequent rule was based.

For example, the Service relies heavily on *Clarke v. United States*, 915 F.2d 699 (D.C. Cir. 1990) (en banc). But in *Clarke*, the Court made clear that, unlike here, no party "claim[ed] that the [superseded law] has had any residual effect on their . . . rights." *Id.* at 701. Rather, *Clarke* involved Congress's "non-reenactment of a one-time condition that expired of its own terms" and had no ongoing effect. *Id.* at 705.

*Theodore Roosevelt Conservation Partnership v. Salazar* is similarly distinguishable because the action challenged there "had no current force or effect." 661 F.3d 66, 79 (D.C. Cir. 2011). The plaintiffs sought to maintain a challenge to a prior rule not because any defects made it invalid but because it was not subsequently enforced, which they argued showed the agency would not enforce a new rule. *Id.* That is not the case here—this challenge to the Delay Rules is live because they are the foundation of the November 2021 Rule but were unlawfully issued and invalid.

*Akiachak Native Community v. Department of Interior* is distinguishable for the same reason and others. 827 F.3d 100 (D.C. Cir. 2016). In that case, the defendant intervenor sought to maintain an appeal after the district court vacated a

19

challenged rule and the defendant agency then rescinded and replaced it. Unlike here, the challenged rule had no ongoing effect. And unlike here, the Court found no relief available because the agency had abandoned its appeal and the intervenor had "brought no independent claim for relief." *Id.* at 102.

Like the decisions discussed above, this challenge to illegal rules with ongoing consequences remains live.

## II.    Exceptions to mootness apply.

The Service's actions here follow new Presidential administrations' playbook for preventing the rules of the previous administration from taking effect. Where there is not enough time to stop a rule in compliance with the APA, agencies short-circuit the rulemaking process with a short-lived delay rule, or series of them, followed by a withdrawal. But a desire to review a duly enacted rule does not justify violating the APA. *E.g.*, *Abraham*, 355 F.3d at 204-06. Given the short duration of such delay rules, challenges to them would evade review if their expiration or a subsequent withdrawal they enable moots them, leaving an entire, increasingly common category of unlawful agency action exempt from review. This lawless outcome is not required because challenges to delay rules are not moot where subsequent withdrawals or replacements are based on them having prevented the prior rule from taking effect. As explained below, mootness exceptions also allow for review.

A.    The capable-of-repetition-yet-evading-review exception applies.

The capable-of-repetition-yet-evading-review exception applies because the Delay Rules were "too short to be fully litigated prior to [their] cessation or expiration" and there is a "reasonable expectation" that the violations alleged will recur. *Doe v. Sullivan*, 938 F.2d 1370, 1376 (D.C. Cir. 1991).

Relying on *Newdow v. Roberts*, 603 F.3d 1002 (D.C. Cir. 2010), the Service argues that the first requirement is not met because Plaintiffs did not appeal denial of a preliminary injunction on the Delay Rules. Resp. at 35-36. *Newdow* did not involve a challenge to an agency action and applying it here would conflict with controlling precedent that agency actions of less than two years evade review. *See, e.g.*, *Kingdomware Techs., Inc. v. United States*, 579 U.S. 162, 170 (2016); *Safari Club Int'l v. Jewell*, 842 F.3d 1280, 1288 (D.C. Cir. 2016). None of these cases requires plaintiffs to move for a preliminary injunction, let alone appeal denial of one, to preserve jurisdiction.

Indeed, going through a lengthy interlocutory appeal would have wasted resources. A summary judgment motion on the First Delay Rule had been pending for five months, so a remedy from the district court could reasonably be expected before a decision on appeal. Moreover, Plaintiffs sought emergency relief because by then the Delay Rules were preventing urgently needed fuel reduction and hazard-tree removal projects during a historic fire season, harming Plaintiffs and the Owl.

*See* ECF 29-1 at 25-29, 36-41 (JA-235-239, 246-251). While Plaintiffs disagree with the district court that the Delay Rules were not irreparably harming them by placing millions of acres "substantially off-limits for timber harvesting" and other active management, *Carpenters Indus. Council v. Zinke*, 854 F.3d 1, 2 (D.C. Cir. 2017) (Kavanaugh, J.), that fire and harvest season would have passed by the time an appeal was resolved.

The Service also argues that Plaintiffs' claim is not capable of repetition because issuance of the November 2021 Rule means that "delay of the now withdrawn and replaced January 2021 Rule cannot again occur." Resp. at 36-37. This argument frames the capable-of-repetition inquiry too narrowly. Wrongful conduct is capable of repetition "even if its recurrence is far from certain," *Ralls Corp. v. Comm. on Foreign Inv. in U.S.*, 758 F.3d 296, 324 (D.C. Cir. 2014), and even if the same facts are not repeatable but the "same legal wrong" is, *Del Monte Fresh Produce Co. v. United States*, 570 F.3d 316, 325 (D.C. Cir. 2009). The public interest in not allowing review of "dawn delays" of duly promulgated rules without public notice and comment also means that "a lesser possibility of repetition may suffice." *Alton & S. Ry. Co. v. Int'l Ass'n of Machinists*, 463 F.2d 872, 879-80 (D.C. Cir. 1972) (citing *Moore v. Ogilvie*, 394 U.S. 814 (1969)).

Here, the legal wrongs alleged—including issuance of dawn delays of midnight rules without complying with rulemaking requirements to prevent them

from taking effect—are capable of harming Plaintiffs again. All but one President since 1980 has issued regulatory freeze memoranda like the one the Service relied on here to justify delaying the January 2021 Rule, and each of the past four Presidents revised the Owl's critical habitat. *See* Opening Br. at 37. This pattern shows it is reasonable to expect that the government will again issue a dawn delay harming Plaintiffs' interests, which span public forests across the western United States. ECF 29-3 at 2-3 (JA-258-259).

Indeed, the specific wrongs alleged here have recurred. The Service twice delayed the January 2021 Rule without complying with rulemaking requirements to prevent that rule from taking effect, and then continued its position that the January 2021 Rule never took effect in the November 2021 Rule. This double delay and continued position that the delays were valid shows the harms alleged are not only capable of repetition but continue. *See United Bhd. of Carpenters v. Operative Plasterers & Cement Masons' Int'l Ass'n*, 721 F.3d 678, 688-89 (D.C. Cir. 2013) (the fact that a dispute over an issue had arisen three times showed that "it [was] not unreasonable to expect" it would repeat).

### B.     The voluntary-cessation exception applies.

The voluntary-cessation exception also applies. The Service cannot show, as it must to defeat this exception, that the November 2021 Rule "completely and irrevocably eradicated the effects of the alleged violation." *County of Los Angeles*,

23

440 U.S. at 631. The November 2021 Rule did not—indeed, it could not—eradicate the effects of the Delay Rules' violations. The Service has even abandoned its position that the November 2021 Rule cured the defects of the Delay Rules by providing required public process. Nor is there any serious dispute that the Delay Rules have ongoing consequences—without them, the critical habitat designation subject to revision by the November 2021 Rule would have been over three million acres larger. Nor can the Service refute that there is a "reasonable expectation" that this unlawful behavior will recur, as explained above. *See id*.

The Service argues that the voluntary-cessation exception does not apply because the Second Delay Rule would have expired on its own terms. Resp. at 34. But it does not matter how an agency purports to have stopped its unlawful conduct. The voluntary-cessation exception applies when, as here, there is evidence that the agency's course of action was motivated by a "manipulative purpose." *Clarke*, 915 F.2d at 705. The Service issued successive, short-term delays of the January 2021 Rule without notice and comment while it sought to withdraw and replace the rule. Records show that the Service not only planned to twice delay and then withdraw the January 2021 Rule from the outset, but also drafted *both* Delay Rules at least as early as February 2, 2021, well before publishing the First Delay Rule on March 1,

24

2021.[9] Meanwhile, the Service contended that the Second Delay Rule mooted the First Delay Rule, and no challenge could be brought to either rule without first providing pre-suit notice and waiting sixty days. *See* Resp. at 11 n.5. The voluntary-cessation doctrine is intended to prevent agencies from manipulating their actions in this way to avoid review of their legality.

Accordingly, this case is also live because the harms alleged are capable of repetition, yet evading review, and the Service's voluntary cessation of its unlawful conduct did not eradicate the effects of the alleged violations.

## CONCLUSION

Based on the above, Plaintiffs' claims are not moot. The Court should therefore reverse the decision of the district court.

---

[9] ECF 29-3 at 77 (JA-289) (Feb. 2 email enclosing drafts of the "2nd delay of effective date"); *id.* at 85-89, 92-97, 107-16 (JA-290-294, JA-296-301, JA-304-313) (drafts); *id.* at 106 (Feb. 4 email from the Associate Solicitor for Parks and Wildlife stating that after the first delay "FWS will issue another proposal, extending the date with notice/comment"); *id.* at 70-75 (JA-282-287) (Feb. 8 email re "1st effective date extension"); *id.* at 76 (JA-288) (Feb. 10 email stating Assistant Director for Endangered Species Gary Frazer "moved the second extension" and "PA is trying to convince folks that we don't need any outreach for the first extension"); *id.* at 90 (JA-295) (Feb. 16 email stating the Service "anticipate[s] a second FR notice on . . . relatively soon, pushing the effective date further"); *id.* at 100 (JA-303) (Feb. 19 email by Assistant Director Frazer stating that "[e]qually important to get published next week is the proposed rule to further extend"); *id.* at 98 (JA-302) (Feb. 29 email from Director Martha Williams stating, "here's where we stand with second rule. SOL is working on a revised draft now—should have a final one . . . very soon").

Dated:        April 11, 2023

Respectfully submitted,

By:   */s/ Tyler G. Welti*
    Tyler G. Welti
    D.C. Bar #1015691; D.C. Cir. Ct. App.
    #1015691
    VENABLE LLP
    101 California Street, Suite 3800
    San Francisco, CA 94111
    tgwelti@venable.com
    415.653.3714
    415.653.3755 (fax)

    *Counsel for Plaintiffs-Appellants*
    *American Forest Resource Council;*
    *Association of O&C Counties; and*
    *Siskiyou County, California*


By:   */s/ Dominic M. Carollo*
    Dominic M. Carollo,
    USDC-DC #OR0011; DC Cir. Ct. App.
    #62507
    Mail:    P.O. Box 2456
    Roseburg, OR 97470
    Office: 2315 Old Highway 99 South
    Roseburg, OR 97471
    dcarollo@carollolegal.com
    541.957.5900
    541.957.5923 (fax)

    *Special Counsel for Plaintiff-Appellant*
    *Douglas County, Oregon*

26

By:  <u>/s/ Susan Elizabeth Drummond</u>

Susan Elizabeth Drummond
(*Pro Hac Vice*); DC Cir. Ct. App. #56482; WSBA #30689
LAW OFFICES OF SUSAN ELIZABETH DRUMMOND, PLLC
12224 NE Bel Red Road
Bellevue, Washington 98009-3157
susan@susandrummond.com
206.310.4709

*Special Counsel for Plaintiffs-Appellants Lewis County, Washington; Skamania County, Washington*

## CERTIFICATE OF COMPLIANCE

In accordance with Fed. R. App. P. 32(a)(7)(B) and 32(g)(1), and Circuit Rule 28(a)(1), the undersigned certifies that the accompanying brief has been prepared using 14-point Times New Roman typeface and is double-spaced (except for headings and footnotes).

The undersigned further certifies that the brief is proportionally spaced and contains 6,482 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and Circuit Rule 32(e)(1).

The undersigned used Microsoft Word to compute the word count.

Dated:        April 11, 2023

*/s/ Tyler G. Welti*_____
Tyler G. Welti

28